[No. 10798. Department One. April 4, 1913.]

JOSEPH F. WOLPERS, *Respondent*, v. THE CITY OF SPOKANE, *Appellant*.[1]

MASTER AND SERVANT—SAFE PLACE—BRIDGE CONSTRUCTION—NEGLIGENCE—QUESTION FOR JURY. The negligence of a city in failing to properly support a temporary arch for a bridge is for the jury, where witnesses testified that it "buckled" or "listed," and leaned upstream six to eighteen inches, that it was an efficient barrier to the wind, and that the wind which caused the fall was not unusual or unprecedented.

SAME—ASSUMPTION OF RISKS. A workman on a city bridge does not assume the risks of changing conditions requiring engineering oversight and due to outside causes, as a high wind and listing, as distinguished from those incidental to the work itself.

NEW TRIAL—GROUNDS—MISCONDUCT OF COUNSEL. In a case against a city, a new trial will not be granted for misconduct of plaintiff's counsel, in that at one time he represented the defendant, where it appears that when he was corporation counsel, his name had been signed to an answer for the defendant, but that he had nothing to do with the case, and was unexpectedly called to represent the plaintiff in the absence of his partner, and the case had been well tried and twice appealed.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 11, 1912, upon the verdict of a jury rendered in favor of the plaintiff, for personal in-

[1]Reported in 131 Pac. 230.

juries sustained through the fall of a temporary arch of a city bridge under construction.   Affirmed.

*Cannon, Ferris & Swan* and *Walter A. White,* for appellant.

*Roche & Onstine* and *Morrill, Chester & Skuse,* for respondent.

CHADWICK, J.—Plaintiff was a carpenter in the employ of the defendant city.  He was working upon a false arch which the city was erecting for the purpose of constructing a permanent concrete bridge across the Spokane river.   The arch fell, throwing plaintiff upon the rocks below.   He was so injured that a jury returned a verdict against the defendant in the sum of $5,000.   The false arch was a temporary wooden structure, and, as we are informed, was built to sustain the longest span of concrete construction in the world. It was guyed by lines, probably ten on the upstream side and ten on the downstream side of the bridge.   The arch had received some support from an old steel bridge which was built in the same place.   In the progress of the work this was cut in the center, and it is doubtful whether it supported the arch in any degree at the time it fell.

The first question presented is the sufficiency of the evidence to sustain the verdict.   It is the contention of the city that it was not guilty of any negligence, and that respondent assumed the risk of his employment, saying:

"The testimony shows conclusively that the methods adopted and the precautions taken by the appellant in the performance of the work in which it was engaged, were ample and sufficient under ordinary circumstances and conditions, and that the falling of the temporary arch was due to an unusual and violent windstorm which ordinary prudence and foresight could not have anticipated or guarded against."

We cannot agree that the testimony is conclusive upon this point.   It is true that certain witnesses said that, in their judgment, the arch was sufficiently guyed to stand the strain

of an ordinary wind; but there is testimony tending to show that the placing of the arch had not progressed satisfactorily, and had caused some dissensions and discussions between the engineers and workmen. Some say it "buckled" or "listed." It "leaned" upstream to an extent variously estimated from six to eighteen inches, necessitating the loosening of the guy wires on the upstream side, so that the others might be tightened. The weather observer testified that winds having a velocity of from thirty to fifty-two miles an hour had occurred during the past thirty years. The jury was warranted in finding that the wind was not unusual or unprecedented. The arch stood high above the stream, and was so constructed as to make an efficient barrier to the wind.

We think that the case clearly called for the intervention of a jury. Whether the arch was constructed and braced so as to stand under ordinary conditions, may excite a difference in the minds of reasonable men, and this is the supreme test when a court is called upon to pass upon these questions as matters of law. Nor do we think plaintiff assumed the risk because of the changing character of the work. Men are called upon to meet the hazards of construction; but in all work requiring engineering oversight they are surely not to be charged under that line of cases holding that a workman is bound to know and assume the risk of such changes as the necessities of construction require. In those cases the proximate cause is found in some change or development incident to the plan of construction; while here the destructive agency was a thing apart which the workman could not guard against or avoid by any exercise of care. He had a right to proceed with his work in confidence that the master had guarded against such dangers as might arise from outside causes as distinguished from those incidental to the work itself. *Engelking v. Spokane*, 59 Wash. 446, 110 Pac. 25, 29 L. R. A. (N. S.) 481. Our judgment is that there was evidence to sustain the verdict, and that plaintiff should not be held to have assumed the risk.

This case was before this court and reported in *Wolpers v. Spokane,* 66 Wash. 633, 120 Pac. 113. At that time, Mr. A. M. Craven was corporation counsel. Prior to Mr. Craven's incumbency and at the time of the accident, one of the present attorneys for the plaintiff was corporation counsel of the city of Spokane. Plaintiff presented his claim, but it was rejected by the city under the advice of the corporation counsel's office. Counsel says:

"I did not . . . have anything to do with the case, in drawing the pleadings or otherwise and took no part in it for the city, and while my name appears on the answer same was prepared by the other attorneys for defendant who had complete charge of the case throughout. Mr. L. F. Chester became a member of the firm of Morrill, Chester & Skuse about a month ago, and before becoming a member of the firm he was retained by the plaintiff to assist in the trial of the case, and fully expected to do so, but yesterday was unexpectedly called out of the city to be absent several days, and has asked me to take his place and I cannot see any reason why I should not do so. I make this explanation so your Honor will understand the circumstances under which my name appears at one time as one of attorneys for defendant, and I now appear at this time as one of the attorneys for plaintiff."

It is contended that, by thus appearing, counsel has violated the ethics usually governing the conduct of attorneys and is guilty of such misconduct as should entitle the city to a new trial. We think, in the light of the whole record, it would be unjust to order a new trial. The case has already been twice tried and twice appealed, and granting that the conduct of counsel is seemingly violative of the ethics of the profession, we think in the light of counsel's explanation that he had nothing to do with the former trial, it would be unjust to punish plaintiff to the extent of putting him to the stress of a new trial.

It is further contended that the damages are so excessive as to indicate passion and prejudice on the part of the jury.

We have examined the evidence and, while the damages seem to be substantial, they are not so great as to indicate that the jury was so controlled.

Judgment affirmed.

CROW, C. J., MOUNT, GOSE, and PARKER, JJ., concur.